AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
_____ District of New Mexico

| | |
|---|---|
| United States of America<br>v.<br><br>Mariah Zuni (year of birth: 1991)<br>*Defendant(s)* | )<br>)<br>)  Case No.  **24mj422**<br>)<br>)<br>)<br>) |

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of March 21, 2024 in the county of Bernalillo in the
_____ District of New Mexico , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Offenses Committed within Indian Country |
| 18 U.S.C. § 1111 | First-Degree Murder |
| 18 U.S.C. § 1153 | Offenses Committed within Indian Country |
| 18 U.S.C. § 1111 | First-Degree Murder |

This criminal complaint is based on these facts:

See Attached.

☒ Continued on the attached sheet.

*Complainant's signature*

Molly Schommer, Special Agent - FBI
*Printed name and title*

☐ Sworn to before me and signed in my presence.
☒ Sworn to telephonically and signed electronically.

Date: March 22, 2024

*Judge's signature*

City and state:  Albuquerque, New Mexico      Honorable Kirtan Khalsa  US Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Molly Schommer, being duly sworn, depose and say:

**INTRODUCTION AND CRIMINAL CHARGES**

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since April of 2021. As such, I am a federal law enforcement officer within the meaning of Rule 41 of the Federal Rules of Criminal Procedure. I am currently assigned to the Violent Crime Task Force ("VCTF") at the FBI Albuquerque Field Office. I primarily investigate Indian Country cases, such as homicide and sexual assault. I have also assisted with the investigation of gang-criminal enterprises and Drug Trafficking Organizations ("DTOs") involved in the unlawful possession of firearms, distribution of controlled substances, racketeering activities, and conspiracies associated with these offenses. I have received on the job training from other experienced agents, detectives, and correctional officers in the investigation of criminal actors and criminal enterprises. My investigative training and experience includes, but is not limited to, the FBI Training Academy at Quantico, Virginia; interviewing subjects, targets, and witnesses; writing affidavits for and executing search and arrest warrants; collecting evidence; conducting surveillance; and analyzing public records. Additionally, I received advanced training and instruction from the United States Indian Police Academy related to Indian Country offenses and the Department of Justice National Indian Country Training Initiative regarding investigating and prosecuting federal sexual assault cases. Before becoming an FBI agent, I was a criminal prosecutor for two years. Through my training and experience both as an FBI Special Agent and city and county prosecutor, I am familiar with techniques used by criminal actors, DTOs, gangs, and criminal enterprises.

2. This affidavit is based on information obtained from my personal observations, my training and experience, information obtained from other law enforcement officers and witnesses,

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

and records I have reviewed. This affidavit does not set forth all of my knowledge nor summarize all of the investigative efforts in this investigation. This affidavit is in support of a criminal complaint and an application for a warrant to arrest **MARIAH ZUNI**, Year of Birth ("YOB") 1991, a member of the Pueblo of Isleta, who I believe committed violations of 18 U.S.C. § 1111 – First-Degree Murder, and 18 U.S.C. § 1153 - Offenses Committed within Indian Country.

## STATEMENT OF PROBABLE CAUSE

3. On March 21, 2024, at approximately 12:25PM, W.E., the father of John Doe 1 and John Doe 2, called 9-1-1 to report a child not breathing and unresponsive. When Isleta Police Department (IPD) Officer CJ Smith responded to the scene, W.E. made a statement to the effect of "my son is gone" and told Officer Smith to detain ZUNI. As reported by Officer Smith, ZUNI then made an excited utterance to the effect of "he needed to die". Officer Smith then detained ZUNI, and while placing ZUNI inside his patrol vehicle noted possible blood on her hands which appeared to be partially washed off, as well as possible blood on her neck. ZUNI then made an additional excited utterance that she did it to protect another child, J.E., from a sex ring at school.

4. IPD Officers then made entry into the residence, where they located 5-year-old John Doe 1, who appeared already deceased with his throat cut. An IPD Officer exited the residence carrying 10-year-old J.E., who was unharmed and who stated to the Officer that "Dad didn't do it" because W.E. was outside the residence at the time of the incident. Once outside, W.E. reported to IPD Officers that a 9-month-old infant was also inside the home. IPD Officers re-entered the residence, where they located John Doe 2 under a blanket. John Doe 2 also appeared deceased with his throat cut.

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

5. Upon arrival of Emergency Medical Services ("EMS") personnel, John Doe 1 and John Doe 2 were observed deceased. Later, on March 21, 2024, the Office of the Medical Investigator ("OMI") pronounced John Doe 1 and John Doe 2 deceased at 21:26.

6. After confirming that John Doe 1 and John Doe 2 were deceased, IPD exited the residence and froze the scene. They contacted the FBI, who responded to the scene.

7. A limited interview of J.E. was conducted by law enforcement personnel. During the interview, J.E. reported she had been outside playing with her brothers while W.E. was working in the field. ZUNI called John Doe 1 and John Doe 2 into the house, and later J.E. was called in and began watching a movie with ZUNI in John Doe 1's bedroom. J.E. believed John Doe 1 was sleeping in the room. After ZUNI stood up, J.E. was searching for the remote control and touched the handle of an item J.E. believed to be a knife.

8. Later, on March 21, 2024, a forensic interview of J.E. was conducted. J.E. said ZUNI put John Doe 2 down for a nap at about 8:00 or 9:00 a.m. J.E. and John Doe 1 were outside the residence. John Doe 1 went inside the residence. ZUNI came outside and asked J.E. if she wanted to watch a movie and said to J.E., "your brothers were so, so tired." J.E. and ZUNI went inside the residence and ZUNI said for J.E. not to go into the room because her brothers were sleeping. J.E. said this was "suspicious." J.E. tried to get a DVD from her room, but ZUNI stopped her and went in the room and got the DVD for J.E. J.E. could see the comforter and it looked like a "mountain," like something was being covered up. J.E. also remembered that ZUNI had changed her clothes that day. J.E. saw brown hair but no breathing, which J.E. thought was either John Doe 1 or John Doe 2.

9. During the forensic interview, J.E. described two knives. One knife was a black and silver kitchen knife, which J.E. saw on the bed with red liquid. J.E. described a second knife that

3

was a long bread knife. J.E. informed it looked like ZUNI had this knife and put it down between the bed and the bookshelf in John Doe 1's room. During the forensic interview of J.E., J.E. drew a drawing of the residence and labeled the middle bedroom as John Doe 1's room. J.E. also drew a picture of the knives she saw.

10. Also, during the forensic interview, J.E informed when J.E.'S dad, W.E., came into the house, ZUNI and W.E. started talking. They talked inside and outside. W.E. came inside, checked on J.E.'S little brothers, and started yelling at ZUNI asking, "Why honey? Why?" ZUNI responded, "I had no choice. I had no choice." J.E. also informed she thought ZUNI was not thinking straight because ZUNI was taking J.E. and her brothers out of school and not letting people visit them.

11. Also later, on March 21, 2024, ZUNI was read her *Miranda* rights and provided the following information. Following up on ZUNI'S excited utterance earlier, law enforcement inquired about concerns at the school. ZUNI informed her main concerns were with the hospitals. ZUNI informed that with all the things happening around her, including the "doctor's office" and "places to eat," ZUNI felt that she was not able to protect her sons. She thought this was the only way she could protect them. ZUNI took them out of this cruel evil world and put them with her dad. ZUNI said, "I cannot think about it. It's too hard." Additionally, ZUNI stated, "I knew in my heart it was the only way to protect them." When asked why that way (referring to how John Doe 1 and John Doe 2 died), ZUNI responded that it was quick and painless as possible. ZUNI used a bread knife that was in the kitchen. When initially asked where ZUNI put the knife, she shook her head and did not answer.

12. ZUNI informed she went to John Doe 2 first because he would be the most difficult and she did not want to do it because he was the youngest. ZUNI said John Doe 2 was on ZUNI'S

4

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

bed. John Doe 2 was later located by first responders in the master bedroom. ZUNI informed John Doe 2 was awake. After, ZUNI washed the bread knife off and dropped it in John Doe 1's room. ZUNI described the knife as silver with a black handle, metal and rubber. Regarding John Doe 2, ZUNI stated that it was "what I had to do to protect him."

13. After John Doe 2, ZUNI went to get John Doe 1. ZUNI took John Doe 1 under the covers in J.E.'S bed, and ZUNI did the same thing to John Doe 1 as she did to John Doe 2. John Doe 1 was awake. When asked if it happened quickly, ZUNI responded as quickly as it could. ZUNI also stated, "I didn't want to do it." After John Doe 1, ZUNI washed off the knife. ZUNI informed that J.E. was outside when it happened for both of them.

14. ZUNI denied consuming alcohol that day. ZUNI denied consuming any drugs or medications. When asked, why today, ZUNI responded, "I was scared." ZUNI also informed law enforcement that she was not able to feed them and not provide them with appropriate medical treatment. ZUNI further informed law enforcement that she had not considered doing this before that day.

15. When asked if ZUNI used the bread knife to cut their necks, ZUNI responded yes and informed it was because it was the quickest way. ZUNI Washed her hands when she washed the knife in the master bathroom and the kids' bathroom.

16. On March 21, 2024, federal search warrant 24-MR-506 signed by United States Magistrate Judge Kirtan Khalsa in the District of New Mexico, was executed at the residence, #87 Tribal Road 87, Isleta Village, New Mexico 87105. Recovered from inside the residence was a silver blade, two-tipped, "Tools of the Trade" brand knife, with a black and silver handle. This knife was located on top of a bookshelf in the middle bedroom. Another silver blade "Tools of the

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

Trade" brand knife with a black handle was located in the same middle bedroom on the floor between a day bed and a bookshelf.

17. ZUNI was arrested by Pueblo of Isleta Police Department on intentional homicide charges and ZUNI is currently being housed at Valencia County Detention Center, Los Lunas, New Mexico.

18. ZUNI, W.E., J.E., and John Doe 1 are enrolled members of the Isleta Pueblo. John Doe 2 was not enrolled due to his young age and paperwork requirements; however, he is otherwise considered an Indian under federal law. Because the home is located within the exterior boundaries of the Pueblo of Isleta, the residence is in Indian Country for purposes of federal law.

### CONCLUSION

19. Based on the information contained herein, I believe there is probable cause to charge ZUNI with violations of 18 U.S.C. § 1153 and 1111, that being Offenses Committed within Indian Country and First-Degree Murder. Assistant United States Attorney Caitlin L. Dillon reviewed this affidavit for legal sufficiency.

Respectfully submitted,

Molly Schommer
FBI Special Agent

ELECTRONICALLY SUBMITTED AND TELEPHONICALLY SWORN TO BEFORE ME ON MARCH 22, 2024:

HONORABLE KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW MEXICO

6